WARREN *v.* FREEMAN and wife.

(*Nashville.*    March 6th, 1887.)

MARRIED WOMAN. *Separate estate.    Charging debt on.    Privy examination.    Description of property.*

A promissory note executed by a married woman upon a valid consideration, and stipulating to bind her "separate estate," *without describing it*, fixes a valid *charge*, but not a *lien*, upon her separate estate, *without her privy examination*, whether such estate consists of personal or *real* property.    Turney, C. J., dissents.

Cases cited and approved: Menees *v.* Johnson, 12 Lea, 561; Porter *v.* Baldwin, 7 Hum., 177; Lytton *v.* Baldwin, 8 Hum., 210; Cheney *v.* Clements, 10 Hum., 552; Shacklett *v.* Polk, 4 Heis., 115; Kirby *v.* Miller, 4 Cold., 3; Ragsdale *v.* Gossett, 2 Lea, 736; Cocke *v.* Garrett, 7 Bax., 365; Jordan v. Keeble, *ante*, p. 412.

(See Ekerly *v.* McGee, *post*, p. —, citing this case.)

FROM CANNON.

Appeal from Chancery Court of Cannon County. E. D. HANCOCK, Ch.

J. A. JONES for Warren.

F. R. BURRIS for Freeman and wife.

CALDWELL, J.    This is a bill to subject the separate real estate of a married woman to the payment of her debt.

33

The lands of John H. Wood, deceased, were sold under decree of the Chancery Court of Cannon County for division among the heirs, etc. His daughter, Mrs. Martha J. Freeman, bought 122 acres of the land at $2,691.56. The sale was confirmed October 25th, 1881, and title was, by decree of the Court, vested in her "*to her sole and separate use, free from the debts or contracts of her husband, J. H. Freeman.*" The note now sought to be collected out of that land is in these words:

"One day after date I promise to pay H. C. Warren, administrator, and E. T. Fisher, administratrix, of A. H. Fisher, deceased, the sum of $313.18, for necessaries furnished *me* by A. H. Fisher in his life-time, and *I bind my separate estate for the payment of this note.* This May 29th, 1884."

    "(Signed),      MRS. M. J. FREEMAN,

        "J. H. FREEMAN, *Security.*"

The payees of the note brought this bill in the Chancery Court against Mrs. Freeman and her husband.

The complainants allege the execution of the note, and that the debt evidenced thereby was created alone upon the credit of the separate estate of the wife, the husband being insolvent at the time, etc., etc.

Defendants admit the execution and justice of the note, and that the husband was then, and is now, insolvent. They say, however, that in law the note is the debt of the husband, and not binding upon the wife; but they do not deny the allegation of

the bill that the credit was extended to the wife alone upon the faith of her separate estate, or that the debt is "for necessaries furnished" *her,* as recited in the face of the note. They plead the *coverture of the wife,* and deny the liability of her land for the payment of the note.

The note and title papers constitute the whole of the proof in the cause.

The Chancellor dismissed the bill as to the wife, and complainants have appealed.

Is the decree right? We think clearly not. The right of a married woman to own and enjoy separate property has long been recognized and encouraged by the courts and the Legislature of this State; and, where there is no restriction or limitation upon her powers, with reference thereto, in the instrument of settlement upon her, it is well settled by the decisions of this Court that her separate estate will, in equity, be held liable for her contracts and engagements when she has therein expressly stipulated to that effect. *Lytton* v. *Baldwin,* 8 Hum., 210; *Cheny* v. *Clements,* 10 Hum., 552; *Kirby* v. *Miller,* 4 Cold., 3; *Shacklett* v. *Polk,* 4 Heis., 115; *Ragsdale* v. *Gossett,* 2 Lea, 736.

These authorities are conclusive against Mrs. Freeman in the present case. She owns the land as separate property, without the slightest restriction upon her powers of enjoyment or alienation. This property she expressly contracts, in writing, to bind for her debt, which she says was created by necessaries being furnished *her* by the creditor. That

the necessaries were furnished before the execution of the note we deem unimportant; that they were furnished her alone upon the credit of her separate estate is fairly inferable from the face of the note itself, and from the insolvency of her husband, as alleged in the bill and admitted in the answer. It is certain that she regarded the debt as her own, and agreed, in writing, to charge its payment upon her separate property. It is likewise certain that her husband so regarded it, otherwise he would not have signed as "security." If it be true, as stated in the answer, that Mrs. Freeman did not understand her legal rights when she executed the note, the burden of showing that fact was upon her. It was not incumbent upon complainants to disprove her statement in avoidance of her contract.

It is true that subjection of the separate estate was refused in most of the cases to which we have referred; but the law was distinctly announced as we have stated it in each of them, and the relief, when denied, was denied expressly and alone upon the ground that the creditor did not bring his case within the rule, by showing *the intention and agreement of the married woman to bind her separate property.*

The same principle was recognized and approved at a former day of the present term of this Court, in the case of *Jordan* v. *Keeble,* Judge Lurton delivering the opinion. There Jordan was repelled because the note of the married woman did not purport on its face to bind her separate estate.

In *Porter* v. *Baldwin*, 7 Hum., 177, the separate estate was subjected to the payment of the married woman's note upon the ground that it was given for the rent of a house for her to live in (or for her comfort, or for necessaries, as in this case), though there was no agreement on her part to bind her property.

We do not ignore, but recognize and follow, the rule of the common law, which declares the contracts of married women, as such, absolutely void and of no binding effect. No personal liability can be adjudged against her. Only her *separate estate*, which itself rests upon equitable principles, can, under like principles, be taken to meet her engagements, entered into with reference to that estate.

In *Cocke* v. *Garrett*, 7 Bax., 365, and in the case just mentioned, of *Jordan* v. *Keeble*, the remedy is declared to be *in rem*, and not *in personam*. It is elsewhere said: " The true *rationale* of the doctrine is, that the liability of a wife's separate property for her engagements is a mere equitable incident of her separate estate, which is itself a creature of equity." 3 Pomeroy's Eq. Jur., p. 49.

And certain English Judges, quoted by the same author, say: " It is a special equitable remedy arising out of a special equitable right." " It is not a woman as a woman who becomes a debtor, but her engagement has made that particular part of her property, which is settled to her separate use, *a debtor*, and liable to satisfy the engagement." *Ib*.

Judge Story says: " Her agreement, however, cre-

ating the charge, is not (as has been said), properly speaking, an obligatory contract, for, as a *femme covert*, she is incapable of contracting, but is rather an appointment out of her separate estate. The power of appointment is incident to the power of enjoyment of her separate property; and every security thereon, executed by her, is to be deemed an appointment *pro tanto* of the separate estate." 2 Story's Eq. Jur., Sec. 1399.

The Chancellor was of opinion that the note in suit would have bound the separate estate of Mrs. Freeman in *personalty*, if she had possessed any *personal* separate property, but that it did not bind her separate *real* estate, because not executed under privy examination, as in case of a deed or mortgage.

This distinction is not taken in any case which we have examined, and we do not regard it as sound. To *charge* her separate property with her debt is in no sense to pass or encumber her title. The liability is not a *lien* upon her land, and does not in the slightest degree restrict her powers of *bona fide* alienation. Therefore, any contract which will authorize a court of equity to subject her separate *personal* property will warrant the subjection of her land held to the same uses; and the privy examination, or authentication for registration, is no more necessary in the one case than the other, and is not required in either.

In *Menees* v. *Johnson* this Court enforced a written charge of a married woman upon her separate

estate in land, though her contract was not authenticated for registration by the statutory privy examination. 12 Lea, 561.

There is no merit in the other ground of defense presented in the answer, which is that "the heirs" conveyed the land in question to Mrs. Freeman by their deed, "without restriction or limitation" upon her title, the next year after the decree vesting the title in her, "to her sole and separate use," and that she claims under that deed.

All the title "the heirs" had was divested by the decree confirming the sale, and they passed no estate by their subsequent deed. The only title she has is that vested in her by the decree. The deed neither added to nor detracted from that title.

The decree dismissing the bill is reversed, and decree will be entered here subjecting the land, or a sufficiency thereof, to the payment of the debt of complainants, interest, and costs.

Turney, C. J., delivered a dissenting opinion.